# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff-Respondent,

vs.

                                Case No.      2:20-cv-00897 KG/JFR

IGNACIO SALCIDO, JR.,                       2:16-cr-04290 KG

      Defendant-Movant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]
## REGARDING MOVANT IGNACIO SALCIDO JR.'s MOTION
## TO VACATE, SET ASIDE OR CORRECT SENTENCE
## <u>PURSUANT TO 28 U.S.C. § 2255</u>

This matter is before the Court on Ignacio Salcido Jr.'s (hereafter "Petitioner") *Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, filed on August 31, 2020.  CV Doc. 1.[2]  Petitioner makes various claims, most of which can be seen as revolving around ineffective assistance of counsel (IAC).  Petitioner argues *inter alia* that he was coerced into signing a plea agreement and therefore his guilty plea was not knowing or voluntary, that his attorney did not provide him a copy of the Form 13 Pre-sentence Investigation Report (PSR), that his attorney did not conduct a necessary investigation or otherwise meaningfully challenge the government's case against him, and that his attorney operated under a conflict that violated his duty of loyalty.  CV Doc. 1.  The Court ordered a

---

[1] On June 24, 2022, the Honorable Kenneth J. Gonzales entered an Order of Reference referring this case to the undersigned to conduct hearings, if warranted, including evidentiary hearings and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case.  CV Doc. 9.

[2] Citations to documents in the underlying criminal case will be "Cr. Doc. ___", and to documents in the instant matter "CV Doc. ___".

response by the United States, which was timely filed on May 6, 2022.  CV Doc. 6.  Petitioner

filed his reply[3] on June 13, 2022.  CV Doc. 8.

   After reviewing the motion, response and reply, as well as the underlying files and

records of the case, I can hold an evidentiary hearing to "determine the issues and make findings

of fact…" if I have any question as to whether the prisoner is entitled to relief.  28 U.S.C. §

2255(b) ("Unless the motion and the files and records of the case conclusively show that the

prisoner is entitled to no relief…").  When reviewing the record in this case, including

Petitioner's motion and reply and the United States' response as well as all the documents in the

underlying criminal case, I am mindful that I must liberally construe a pro se litigant's pleadings

and hold them to a less stringent standard than pleadings drafted by an attorney.  *Hall v. Bellman*,

935 F.2d 1106, 1110 (10th Cir. 1991).  I have done so here and have determined that no such

evidentiary hearing is warranted, as the Motion, files and records in this matter conclusively

show that Petitioner is not entitled to relief.  I am comfortable ruling without taking additional

testimony or evidence.

   As discussed below, I recommend that the Court deny Petitioner's motion.  Furthermore,

I recommend that the Court deny a certificate of appealability and enter judgment accordingly.

BACKGROUND AND PROCEDURAL HISTORY

   In August 2016, officers with the Las Cruces Police Department were dispatched to a

local school in reference to sexual assault allegations.  It turns out the claims were initiated by

Petitioner's son, wherein the minor child indicated that he and his father had traveled to

---

[3] In his Reply, Petitioner requests that the Court grant additional time to file his reply.  Doc. 8 at 1 ("I would like to request an extension so that this Response can be legible…").  The Court has considered this request and recommends that it be denied.  Petitioner's Reply addresses the central claims he makes in his § 2255 motion, and sufficiently answers the government's Response.  Petitioner claims that he is hampered by not having access to a writing implement or to his property, Doc. 8 at 1, 3, which assertions give the Court pause.  Nonetheless, because Petitioner aptly presents his arguments and answers the government's response, the undersigned fails to see how additional time will materially add to Petitioner's legal position.

California over the previous weekend, where they met with a third individual and the three stayed in a hotel room in San Diego.  The three then departed for New Mexico and, while driving through Phoenix, Arizona, they picked up a female hitchhiker.  It was during the return drive that Petitioner's minor son claimed Petitioner had sexually abused the hitchhiker, who was 14 years old, after their return to New Mexico.  *See* CV Doc. 6, Ex. 1 ("Form 13 PSR").[4]

Pursuant to the investigation, law enforcement interviewed the victim who stated that she was sexually assaulted by Petitioner, in Las Cruces, New Mexico.  Officers also interviewed Petitioner.  After being advised of his *Miranda* warnings, Petitioner confirmed that he traveled to California with his son and that, on the return trip, picked up the victim in Arizona who was hitchhiking.  Petitioner denied having sexual intercourse with the victim.  Petitioner refused to provide officers a DNA sample and requested an attorney.  Law enforcement then obtained a search warrant of Petitioner's residence, where they were able to locate and seize the clothing that the victim described she had worn during at the time of the sexual assault.  DNA testing revealed the male DNA profile obtained from the clothing matched the DNA profile obtained from Petitioner.  Cr. Doc. 63, ¶ 21.

Petitioner was arrested in August 2016, at which time the Magistrate Judge ordered his detention.  Cr. Doc. 5.  On November 9, 2016, Petitioner was indicted by the grand jury and charged with Transportation with Intent to Engage in Criminal Sexual Activity, contrary to 18 U.S.C. §2423(a).  Petitioner moved the court to reconsider his order of detention, which motion was denied.  Cr. Doc. 22.  Shortly thereafter Petitioner's counsel moved for a Form 13 PSR[5],

---

[4]  Respondent provided a copy of the Form 13 PSR to the undersigned on May 6, 2022, contemporaneous to filing its response.  The Court has also reviewed the final PSR that was generated in this matter and notes the Offense Conduct is largely identical to that of the Form 13.  *Compare* CV Doc. 6, Ex. 1 *with* Cr. Doc. 63.

[5]  A Form 13 PSR is an abbreviated presentence investigation with primary focus on the defendant's criminal history and Sentencing Guidelines analysis.  It is generally completed prior to a defendant's adjudication of guilt, does not involve the interview of the defendant, and is often used by counsel to inform the parties in plea negotiations.

which motion was granted by the Court.  Cr. Docs. 23, 25.  After several trial continuances, and after the completion of the Form 13 PSR, the case was scheduled for a change of plea hearing on March 31, 2017, but said hearing was vacated as Petitioner opted against pleading guilty.  Cr. Doc. 54.

On April 12, 2017, the District Judge scheduled a hearing to address Petitioner's request to proceed to trial without a jury, but that hearing was converted to a change of plea at Petitioner's request.  As indicated by Petitioner's counsel, "there have been ongoing discussions and conversations with my client, and I met with him again yesterday afternoon, and based upon our discussions he advised me that he wanted to proceed with the Plea Agreement that was tendered a couple of weeks ago…"  Cr. Doc. 70 at 2.  The Assistant United States Attorney indicated that his office would honor the prior offer, and when asked by the Court whether he wanted to proceed and plea guilty, Petitioner answered in the affirmative.  *Id.* at 3.  Petitioner pleaded guilty to a one-count indictment, and the parties agreed pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, that a specific sentence range of 120 to 135 months imprisonment is the appropriate disposition of the case.[6]  Cr. Doc. 60 at 4.  Petitioner agreed to waive all rights conferred by 18 U.S.C. § 3742.  *Id.* at 8.

As part of his plea agreement, Petitioner admitted the following facts:

On or about August 22, 2016, in Dona Ana County, New Mexico, and elsewhere, the defendant, Ignacio Salcido, Jr., who was 38 years old on that date, knowingly transported an individual, Jane Doe, who was under eighteen (18) years old on that date, in interstate and foreign commerce with the intent to engage in sexual intercourse with Jane Doe.  Defendant could be charged with a criminal offense for engaging in sexual intercourse with Jane Doe, specifically, a violation of Section 30-9-ll(G)(l) NMSA 1978.  At the time of his arrest, the defendant told LCPD officers that the defendant believed Jane Doe was seventeen (17) years old and would soon be eighteen (18) years old.

---

[6] It was also agreed that Petitioner would pay restitution in the amount of $210,012 to any victim.

4

Cr. Doc. 60 at 3-4.

During the change of plea hearing, Petitioner confirmed that he had read the Plea
Agreement carefully before signing it, that he had "several meetings" with his attorney
throughout the past few weeks, and after going "back and forth and working with the
prosecutors", Petitioner explained that he was ready to sign the agreement. *Id.* at 3. The Court
had the defense attorney recite the salient features of the plea agreement on the record, with the
understanding that Petitioner would object if he was unaware of any of those features or if he
disagreed with them. *Id*. at 6. Petitioner did not raise any objections to his attorney's recitation.

To ensure that Petitioner entered into a knowing and voluntary guilty plea, the District
Judge asked Petitioner if he agreed with his counsel's recitation, if he understood the possible
penalties of the statute, if he understood that he is waiving rights by pleading guilty, and if he in
fact wanted to plead guilty. To each question, Petitioner answered affirmatively. Cr. Doc. 76 9-
11. Specifically, Petitioner stated:

> THE DEFENDANT: Well, I think, Your Honor, since I think that I have a lot of
> questions that probably can't even be answered, I mean, as far as that I would
> need to be honest, you know, but as far as, you know, I think I'll be dealing with
> the questions for ten years. You know what I mean? But they aren't going to be
> answered, you know, today or tomorrow. But as far as agreeing with the
> document and knowing my rights and knowing what I'm forfeiting and knowing
> what benefits I'm receiving as well, I understand that, Your Honor.

*Id.* at 11. Shortly thereafter, Petitioner expressed some reservations about the process, and
particularly the presumption of innocence, and the following colloquy took place:

> THE COURT: You can consider everything about what you would do to
> represent yourself and the kind of case that you would put together to represent
> yourself, but do you understand that you don't have to do anything like that? In
> other words, you can sit at counsel table, not say a word, not call anybody to
> testify for you, not present any evidence at all, and the only evidence would be
> what the prosecutor puts forward? And if the jury decides that that's not enough
> evidence to convict you even though you didn't do anything to represent you, by

presenting evidence or calling witnesses, that still means you walk out of here a free man. Do you understand this?

THE DEFENDANT: I do. And I understand the flip side, that, you know, for whatever -- You know, I'm gonna sit here -- sit there and have all this mud slung at me and at the end of the day, you know, be slammed with 22 years, you know, you know, in the penitentiary when I'm being offered a plea for ten, you know, so it doesn't -- You know, it still is a difficult situation, you know, like I said, to sign something that -- that, you know -- to, you know, the culpability again, I've struggled with it, you know. And I guess you'll be able to hear some of the facts of that case, of the case, you know, were but, you know, at this point, I mean, that's where we're at and that's where -- You know. I'd hate to risk, you know, to -- even if I don't present a case in front of the jury and just sit there and don't say nothing in my defense, because I do have a defense. I have several things that I want to say. You know what I mean? I wouldn't even mind taking the stand myself, you know, against my attorney's advice, but it's like I'm saying, I'm just trying to explain from my point of view where I'm at and what -- you know, what's helped me to make the decision.

THE COURT: We can stop right here. We can just put an end to this plea hearing, forget about the Plea Agreement, and proceed with trial just like we were scheduled in May, and you can exercise all of these rights, you can decide to testify, you can decide to not testify. That's your right. We can have this trial and let's see how things go. It's entirely up to you, Mr. Salcido. I don't -- It doesn't matter to me. What I want to make sure of, though, is that you really do want to do what you're saying you want to do, which is plead guilty under this Plea Agreement. If you do, well, let's proceed. If you don't, that's okay, we'll have a trial.

THE DEFENDANT: Yes, Your Honor, I'd rather try and -- try and agree -- or agree to this plea than -- you know, I guess it's still subject to your approval of the 10 to 12 years versus facing 22 years.

*Id*. at 17-19. Finally, Petitioner stated that "[m]y hope is that -- that the Court would approve the agreement so that I can avoid a longer sentence." *Id.* at 22. Petitioner confirmed that no one was forcing him or threatening him to plead guilty, *id.* at 25, but expressed that he still felt a measure of coercion in the process. *Id.* at 26. When pressed to explain his thinking, Petitioner stated:

THE DEFENDANT: Your Honor, I think, you know, you just -- I mean, without -- You know, I'm going to try and not use the coercion that I feel is coming from that side, you know, to make a decision. I think that more so the words that you have used to just make sure that everything is plain, and for example, you know, saying, you know, I do believe that this plea bargain is in my best interest. So my

wish is to move forward and to -- to hope -- my hope would be that the Court
would move forward, accept my plea.  It is in my best interest, you know.

Of course, with everything that I've added to, you know, to that, why it's in my
best interest, you know, and it's taking -- taking into account pros and cons.  You
know what I mean?  Everything that you've stated, Your Honor.  I still feel, and I
would like to move forward with this plea.

I just -- I think as far as some of the questions maybe that are being asked, you
know, the way that I'm answering them, the questions that I have about the
questions, and it's made this -- this proceeding probably a little bit more difficult,
and I apologize for that, Your Honor.  I'm not trying to do that.  I'm just trying to
be as honest as I can as possible.  And it's clear, you know, trying to understand
this, you know, this -- you know, make sure I know everything that's going on,
and you've made -- you've helped me to, you know, understand things better, and
I think that some of -- some of the last words that you used, you know, is this plea
in my best interest, I do believe so, Your Honor.

*Id*. at 29-30.

The Court also inquired into Petitioner's satisfaction with his attorney's advice and

representation, and Petitioner affirmed that he was satisfied with how trial counsel had

represented him.  *Id.* at 34-35.  After the government recited the facts that it would present at

trial, the Petitioner confirmed that he "would like to move forward, Your Honor, with -- continue

with the Plea Agreement that I do feel is in my best interest, as well."  *Id.* at 38.

Sometime thereafter, Petitioner experienced a change of heart.  Through new counsel,

Petitioner moved to withdraw his guilty plea, claiming that his guilty plea was coerced, that his

trial counsel did not conduct a proper investigation or prepare for trial; Petitioner also alleged

that his counsel did not properly advise him of what punishment he would likely face if he were

convicted at trial.  Cr. Doc. 82.  The motion was denied after hearing.  Cr. Doc. 164.  In its order

denying the motion, the District Judge found that "the plea agreement, the plea colloquy, and the

Court's observations of Defendant at the change of plea hearing all demonstrate that Defendant

knowingly and voluntarily entered into the guilty plea."  Cr. Doc. 164 at 2.  While the motion to

withdraw was pending and before sentencing, Petitioner's counsel moved for a determination of Petitioner's competency.  Cr. Doc. 104.  That motion was granted, a psychological evaluation was completed, and after evidentiary hearing the Court found Petitioner competent to proceed. Cr. Doc. 129.

Sentencing occurred on February 28, 2019.  At that time the District Judge accepted the Plea Agreement and sentenced the Petitioner to 120 months, or the minimum sentence contemplated by the Petitioner's Rule 11(c)(1)(C) Plea Agreement.  In doing so, the Court adopted the findings of the PSR, but sustained the Petitioner's objection to the 2-level upward adjustment (based on U.S.S.G. ⁋ 3A1.1(b), vulnerable victim).  Cr. Doc. 173 at 3; *see* Cr. Doc. 74 (Addendum to PSR).  Accordingly, Petitioner's recommended Sentencing Guidelines sentencing range was 97-121 months.  *See* Cr. Doc. 199 at 27.  The Court imposed the statutory minimum mandatory sentence of 120 months.  Cr. Doc. 174.

Petitioner appealed his conviction and sentence to the Tenth Circuit Court of Appeals, which dismissed the appeal and enforced the Plea Agreement's appellate waiver.  *See* Cr. Doc. 204-1, Order and Judgment.  Petitioner then moved the Court to reduce his sentence under 18 U.S.C. § 3582 and the First Step Act of 2018, which motion was denied.  Cr. Doc. 216. Petitioner now brings his motion pursuant to 28 U.S.C. § 2255.

PETITIONER'S CLAIMS AND THE PLEA AGREEMENT'S APPEAL WAIVER

To begin, I have considered Respondent's argument that much of Petitioner's Motion is barred due to the "Waiver of Appeal Rights" contained in the plea agreement.  *See* Cr. Doc. 60, ¶ 17; CV Doc. 6 at 1 ("With the exception of his ineffective assistance of counsel claims, Defendant's challenges are barred by the collateral attack waiver he entered into as part of his plea agreement.").  In his Plea Agreement, Petitioner agreed to the following waiver:

> 17.    The defendant is aware that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 afford a defendant the right to appeal a conviction and the sentence imposed. Acknowledging that, the defendant knowingly waives the right to appeal the defendant's conviction(s) and any sentence, including any fine, imposed in conformity with this Fed.R.Crim.P. 11(c)(1)(C) plea agreement, as well as any order of restitution entered by the Court.  In addition, the defendant agrees to waive any collateral attack to defendant's conviction(s) and any sentence, including any fine, pursuant to 28 U.S.C. § 2241, 2255, or any other extraordinary writ, except on the issue of defense counsel's ineffective assistance.

Cr. Doc. 60, at 8.  To the extent that Petitioner seeks to claim that he is actually innocent of the criminal charge, that claim has been waived by the clear language of his plea agreement. Similarly, Petitioner's claim that his lawyer misled, coerced and/or deceived him into pleading guilty and that such chicanery resulted in a Due Process violation, amounts to a collateral attack on his conviction and therefore is also waived.  Petitioner's claims that his attorney's failure to produce documents, to perform necessary duties or to make certain legal argument, and to otherwise conduct an adequate investigation or subject the prosecution's case to adversarial testing—all causing his guilty plea to be coerced—are considered under the category of ineffective assistance of counsel.  The Court is mindful of its obligation to liberally construe the arguments of a pro se litigant, *Hall*, 935 F.2d at 1110[7], and will do so in its review of Petitioner's motion.

## STANDARD OF REVIEW

Section 2255 entitles a prisoner to relief "[i]f the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the

---

[7] Specifically, the Tenth Circuit in *Hall* noted: "A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. [. . .]  We believe that this rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements.  At the same time, we do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant."  935 F.2d at 1110 (citations omitted).

constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). The standard applied to § 2255 motions is stringent and not every violation of federal law can be remedied under § 2255. *United States v. Gordon*, 172 F.3d 753, 755 (10th Cir. 1999). "Only if the violation constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure'" can § 2255 provide relief. *Id., citing United States v. Talk,* 158 F.3d 1064, 1069 (10th Cir. 1998). The Court presumes the proceedings which led to a defendant's conviction were correct. *Parke v. Raley*, 506 U.S. 20, 29–30 (1992).

The Sixth Amendment of the U.S. Constitution guarantees the right to effective assistance of counsel at trial. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). For Petitioner to succeed on his claims of ineffective assistance under § 2255, he must demonstrate both that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." *Id.* at 687-88. For counsel's performance to fall outside the bounds of professional reasonableness, Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. To show prejudice, Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A court "may address the performance and prejudice components in any order, but need not address both if [the defendant] fails to make a sufficient showing of one." *Cooks v. Ward*, 165 F.3d 1283, 1292–93 (10th Cir. 1998).

To meet this burden, a petitioner's "allegations must be specific and particularized, not general or conclusory." *Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995); *see United*

*States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (conclusory allegations are insufficient to support an ineffective assistance of counsel claim.).  "[S]heer speculation" that counsel might have done something different that might have resulted in Petitioner receiving a shorter sentence "does not rise to the level of a constitutional claim."  Then, even if Petitioner can make that showing, he still must show there is a reasonable probability that, but for his counsel's unprofessional errors, his sentence would have been different.  *See Strickland*, 466 U.S. at 694.  To be considered *ineffective* assistance of counsel, "the representation must have been such as to make the [proceeding] a mockery, sham, or farce, or resulted in the deprivation of constitutional rights."  *Lorraine v. United States*, 444 F.2d 1, 2 (10th Cir. 1971).  The Court must give considerable deference to an attorney's strategic decisions and "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690; *United States v. Barrera-Muñoz*, No. 11-CR-1065, 2013 WL 12142581, at *3 (D.N.M. July 3, 2013*), report and recommendation adopted,* No. 11-CR-1065, 2013 WL 12140980 (D.N.M. Oct. 8, 2013).

As explained below, I conclude Petitioner's claims fail because counsel's representation was not objectively unreasonable, nor did Petitioner suffer prejudice as a result of that representation.

ANALYSIS

1. Whether Petitioner's Counsel Were Ineffective

Petitioner claims that his first attorney was constitutionally ineffective when he failed to produce documents, failed to conduct an adequate investigation and secure necessary evidence, and failed to subject the prosecution to any meaningful adversarial testing.  Petitioner claims that these acts, or failures to act, caused Petitioner's guilty plea to be unknowing and involuntary.

Petitioner discusses in narrative form various examples of counsel's actions, or inactions, throughout the course of his representation.  Broadly grouped, these acts include:

Petitioner's Guilty Plea Was Uninformed and the Result of Ineffective Assistance
> • counsel never provided Petitioner a copy of the Form 13 PSR (CV Doc. 1 at 3, 11, 16);
> • the Form 13 PSR would have demonstrated to Petitioner that he was not receiving any benefits by pleading guilty, and that his likely sentence would have been the same had he proceeded to trial (CV Doc. 1 at 3, 7);

Counsel's Performance Was Ineffective
> • counsel failed to obtain a copy of the WalMart surveillance video (CV Doc. 1 at 6, 16; CV Doc. 8 at 4);
> • counsel never informed the Court of Petitioner's father's health issues, nor did he seek an emergency visit or video call with his father prior to his death (CV Doc. 1 at 9);
> • counsel did not obtain or present the testimony of Petitioner's intellectually disabled son, who Petitioner claims possessed exculpatory information (CV Doc. 1 at 22; CV Doc. 8 at 4);
> • counsel failed to "correct" the narrative of the government or "set the record straight" (CV Doc. 1 at 17, 22; CV Doc. 8 at 2);
> • counsel failed to raise a meaningful adversarial challenge to the government's case (CV Doc. 1 at 13, 24);
> • counsel allowed the Prosecutor to "manipulate" the plea bargain for a charge that Petitioner is actually innocent of (CV Doc. 1 at 21);

Counsel's Lack of Loyalty to Client
> • counsel stopped working for Petitioner when Petitioner's funds lapsed (CV Doc. 1 at 21);
> • counsel failed to inform Petitioner that he had approached the Court to seek CJA funding (CV Doc. 1 at 21);
> • counsel refused to provide Petitioner legal research on judge recusals (CV Doc. 1 at 9).

> a.   Whether the guilty plea was uninformed or otherwise coerced

 The undersigned has reviewed the record for evidence that might suggest that Petitioner's guilty plea was somehow not voluntary or knowing.  In doing so, I have reviewed the docket and the numerous filings, I have reviewed transcripts of the plea and sentencing hearings, and have reviewed the PSR and other documents relevant to sentencing.  I have also familiarized myself with the post-conviction litigation initiated by Petitioner, including his direct

appeal to the Tenth Circuit Court of Appeals, as well as his motion to reduce his sentence pursuant to the First Step Act.  I have reviewed the record with a primary focus on Petitioner's claim of IAC.  Here, Petitioner must demonstrate deficient performance by his counsel that caused him prejudice.  *See United States v. Gordon*, 4 F.3d 1567, 1570 (10th Cir. 1993), *cert. denied*, 510 U.S. 1184 (1994).

Relevant to a guilty plea case, the Supreme Court has rephrased this standard by stating that "but for counsel's errors, [defendant] would not have pleaded guilty and insisted on going to trial."  *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  In applying this standard, courts look to the strength of the government's case "as the best evidence of whether a defendant in fact would have changed his plea and insisted on going to trial."  *Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001), *citing Hill,* 474 U.S. at 59-60.  The Court in *Hill* explained:

> In many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial.  For example, where the alleged error of counsel is a failure to investigate or discover exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea.  *This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of the trial.*

*Id.* at 59 (emphasis added).

Here, Petitioner had been indicted with transportation of a minor in interstate commerce for the purpose of engaging in a sexual act.  Cr. Doc. 15.  The charge carries a statutory mandatory minimum sentence of ten (10) years.  18 U.S.C. § 2423(a).  Petitioner claims that his lawyer affirmatively advised him to negotiate a plea agreement with the government, in order to receive a shorter sentence than he likely would receive if he were found guilty after trial.  The undersigned finds such advice in federal criminal cases to be commonplace and will accept that counsel advised Petitioner to accept the plea offer.

13

Upon review, the government's case against Petitioner appears very strong, further lending support to counsel's advice, and to Petitioner's decision to plead guilty and not risk exposing himself to additional prison time beyond the minimum mandatory. The evidence established that Petitioner transported the victim from Arizona to New Mexico and formed the intent to engage in criminal sexual activity with the victim. Petitioner's son provided damning testimony as to what he saw and heard, including seeing Petitioner attempting to digitally penetrate the victim as she slept in the vehicle, observing Petitioner relocate from the back seat of the vehicle (where the victim had been) to the front seat while pulling up his pants, and then later that evening hearing moaning and "humping" noises which he assumed to be his father having sexual intercourse with the victim in the other room. Cr. Doc. 63 (PSR) at ¶¶ 14-15. Additionally, the third-party witness who was present during the return trip to New Mexico stated that she observed Petitioner try to put his hand up the victim's dress in the vehicle, that during a stop she returned to the car seeing Petitioner pulling his pants up and that the victim had moved from the rear seat to the front. *Id*. at ¶ 17. Most importantly, the victim directly accused Petitioner of having exposed his penis to her in the vehicle, that Petitioner tried to get her to masturbate him, and that she awoke that evening to being penetrated by the Petitioner on the couch in the living room. *Id*. at ¶ 18. The victim also stated that Petitioner brought her a change of clothes and told her he would launder her dirty clothes for her. Law enforcement then collected these dirty clothes pursuant to a search warrant, and subsequent DNA testing matched the sample found on the clothes to the sample taken from Petitioner. *Id*. at ¶¶ 19-20. Based on this record, I find the evidence in the underlying criminal case to be exceptionally strong, and that counsel's advice to Petitioner to negotiate and accept a plea agreement, and not proceed to trial, was sound advice from an experienced attorney.

But even if there were a legitimate question as to counsel's effectiveness by advising his client to plead guilty, the Court doesn't see where any prejudice resulted to Petitioner. The consequences for rejecting the plea agreement and proceeding to trial were dire, with a strong likelihood of conviction and a far longer sentence. As noted in the PSR, Petitioner was facing a recommended Sentencing Guidelines sentencing range of 135-168 months, approximately 1 to 4 years longer than the statutory minimum of 120 months. Cr. Doc. 63, ¶ 83. Even if the Court would have imposed a Guidelines sentence after a conviction at trial (as opposed to departing or varying upward), the Plea Agreement trimmed real time off Petitioner's sentence, and while the savings may not have been as much as Petitioner claimed his counsel had predicted,[8] there is no doubt that Petitioner still benefitted from his plea agreement.

Finally, a review of the plea hearing transcript also demonstrates that Petitioner was not threatened or coerced into pleading guilty. Cr. Doc. 76. Counsel for Petitioner provided a lengthy recitation of the salient features of the plea agreement, and at no time did Petitioner object or otherwise voice any misgivings. *Id.* at 6-9. After the defense attorney finished summarizing the agreement, the District Judge confirmed that Petitioner had reviewed the document with his attorney and intended to waive his rights to a trial. *Id.* at 10-11. While the Petitioner did explain that he was having difficulty in accepting the factual basis, *id.* at 12, and that he felt a measure of coercion, *id.* at 26, 29-30, Petitioner acknowledged that no one was threatening him, *id*. at 33, and that he still wanted to plead guilty. *Id.* at 29 ("…I do believe that this plea bargain is in my best interest. So my wish is to move forward and to -- to hope -- my

---

[8] Petitioner claims that "I did not know what to do especially when you [are] in middle of court and attorney had made it clear that we could not win and I'm being threatened with 22 [years] even up to life or even 135 to 168 [months] . . . ." CV Doc. 8, at 3-4.

hope would be that the Court would move forward, accept my plea.  It is in my best interest, you know.").

The only instance of claimed IAC that Petitioner tends to articulate in a manner that suggests he suffered prejudice concerns his attorney's failure to provide him a copy of the Form 13 PSR.  Petitioner states that, had he been in receipt of this document, he wouldn't have pleaded guilty.  That is because the Form 13 PSR confirmed that his advisory Sentencing Guidelines sentencing range was 135-168 months, and not the "22 years to life" that he was led to believe by counsel.  Petitioner avers that he would have proceeded to trial had he known this information, since the difference between the plea agreement's range (120-135 months) and conviction-at-trial range (135-168 months) was small enough to warrant the risk.  Petitioner's argument might hold some attraction but for the facts that (1) as noted above, the Court sees the evidence against Petitioner as exceptionally strong, so acquittal would have been highly unlikely, and (2) Petitioner received the statutory minimum sentence of 120 months, so absent an acquittal the end result in his case was as favorable as the law permits.  The Court concludes that, ultimately, Petitioner suffered no prejudice by not having reviewed the Form 13 PSR prior to his guilty plea.  *See Gordon*, 4 F.3d at 1570 (counsel's performance not only must be deemed deficient, but it also must have resulted in prejudice to petitioner, in order for petitioner to be entitled to relief).

In his Reply, Petitioner emphasizes that his case is a "mens rea" case, and that he could not have been found guilty because the government could not have proved his "intent".  CV Doc. 8 at 2.  Even though he was given an opportunity to confer privately with his attorney during the plea hearing, he boldly claims that "there was no way I intended [illegible: pleading?] since it was mens rea".  CV Doc. 8 at 3.  Petitioner now makes this claim despite the fact that he

16

contemporaneously confirmed to the District Judge that he wanted to go through with pleading

guilty.  Petitioner's argument that he would have gone to trial and raised a defense of lack-of-

intent, if only he had been allowed, is not supported by the record.  Ultimately, the undersigned

finds that Petitioner was not coerced into pleading guilty, and that counsel provided effective

assistance in negotiating and advising Petitioner through the plea process.

> b. <u>Whether defense counsel failed to locate evidence or present all evidence on behalf of Petitioner at sentencing</u>

Petitioner next complains that his defense counsel failed to locate and collect evidence,

including WalMart surveillance video and witness testimony.  In a conclusory fashion, Petitioner

states that the video would have provided exculpatory evidence.  At no point, however, does

Petitioner explain how the video footage would have helped his case.  Nonetheless, the Court

will liberally assume that Petitioner believes that the video would show a victim who appeared to

be at least 18 years old.  But even if this were true, such evidence would not, and could not,

obviate the fact that the victim was in fact not 18, and that a mistaken belief that someone is 18

years old or older is not a defense to § 2423(a).  *See United States v. Lacy*, 904 F.3d 889, 898

(10th Cir. 2018) (in §2423(a) prosecution, "[t]he government was not required to prove that

Defendant knew his victim was underage.  It is enough that the government proved the victim

was actually seventeen years old during the relevant time period.").  Alternatively, if Petitioner

believes that the video footage would have served to rebut application of the vulnerable victim

enhancement (by showing the victim appeared over 18 years old),[9] this argument is moot since

---

[9] Petitioner writes that his attorney "later said [the WalMart] video was not needed because if [I] plead guilty [the] government was willing to waive enhancements.  Video from WalMart could have been used when [the] government in fact decided or mentioned that they never agreed to waive enhancement or that somehow enhancement had been left in the process, but enhancement could not be allowed because the statute recited in the plea bargain did not reflect such allegations as the enhancements were implying.  Video would have served early on to attack the narrative that was being written by the government as early as the bond hearing.".  CV Doc. 1 at 16-17.

the District Judge ultimately sustained the defense objection to the enhancement and didn't apply it at Petitioner's sentencing.  Cr. Doc. 199 at 27.  The undersigned finds that Petitioner suffered no prejudice by his counsel's failure to obtain the WalMart surveillance video.

In addition to the aforementioned video footage, Petitioner generally states that counsel failed to secure the testimony of his intellectually disabled son, but doesn't explain how such testimony would have helped.  CV Doc. 1 at 22.  Other examples of alleged (but undeveloped) ineffective assistance include counsel never informing the Court of Petitioner's father's health issues or otherwise seeking an emergency visit or video call with his father prior to his death (CV Doc. 1 at 9); counsel failing to "correct" the narrative of the government or "set the record straight" (CV Doc. 1 at 17, 22; CV Doc. 8 at 2); counsel failing to raise a meaningful adversarial challenge to the government's case (CV Doc. 1 at 13, 24); counsel allowing the Prosecutor to "manipulate" the plea bargain for a charge that Petitioner is actually innocent of (CV Doc. 1 at 21).  In none of these examples, however, does Petitioner set forth or develop any intelligible argument as to how his lawyer's actions (or inactions) resulted in actual prejudice to him. Petitioner boldly states that, had his counsel acted or done what Petitioner wanted, Petitioner then would not have pleaded guilty, but such a claim is rank speculation and is belied by Petitioner's own statements at his plea hearing.  *See* Cr. Doc. 76 at 35 (Petitioner stated at his plea hearing that he was satisfied with how his defense attorney has represented him).  The Court agrees with Respondent that these arguments are speculative, conclusory and vague.  *See* CV Doc. 6 at 12.

c.  <u>Whether defense counsel violated his duty of loyalty to his client</u>

Finally, Petitioner makes a number of allegations that suggest his first attorney had a conflict of interest that affected the lawyer's duty of loyalty.  Petitioner claims that

his first lawyer (whom Petitioner privately retained) stopped working for Petitioner when Petitioner's funds lapsed (CV Doc. 1 at 21); that his first lawyer failed to inform Petitioner that he had approached the Court to seek CJA funding (CV Doc. 1 at 6, 21); and that his third lawyer refused to provide legal research on judge recusals (CV Doc. 1 at 9).

Petitioner's first claim—that his lawyer stopped working when Petitioner's money ran out—suggests that counsel's motivation was to do as little work as possible, thereby explaining counsel's failure to disclose the Form 13 PSR, his failure to obtain the WalMart video recording, his refusal to obtain crucial testimony from Petitioner's son, and his failure to communicate with Petitioner and his family regarding the health condition of Petitioner's father.  A review of the docket suggests otherwise, as counsel filed several motions, including a detailed *ex parte* motion with the Court seeking Rule 17(b) subpoenas and an order of free process, to secure the attendance of necessary witnesses at trial, precisely because Petitioner couldn't afford the costs for a necessary defense.  Cr. Doc. 55 ("*Ex Parte Sealed Motion for Subpoena Pursuant to Fed. R. Crim. 17(B) and Incorporated Motion for Order for Free Process*").  In that motion, counsel persuasively sets out the basis for the relief sought, and establishes how the listed witnesses would provide necessary, relevant testimony that would challenge the government's allegations.  For example, counsel explained that one witness, Petitioner's brother-in-law, would substantiate "that Mr. Salcido's primary purpose in crossing state lines was twofold: to get the truck parts to the mechanic in Mexico, and to get his son to New Mexico for school…".  Cr. Doc. 55 at 2.  Counsel also sought a subpoena for the individual who traveled with Petitioner and the victim from Arizona to New Mexico, who

would testify that based on her observations the sexual intercourse between Petitioner and the victim was consensual.  *Id.* at 3.  This motion tends to refute Petitioner's claim that his attorney did not advocate for him or abide by his duty of loyalty to his client, as it demonstrates counsel worked diligently, thoughtfully and in a timely manner, to provide his client a defense to the criminal charges.

Petitioner also alleges that his first lawyer had secretively arranged to be paid by the Court through CJA funding, CV Doc. 1 at 6, but the record disproves this claim. Attorney Jose R. Coronado entered his appearance on August 30, 2016.  Cr. Doc. 3.  Mr. Coronado remained as counsel for Petitioner until his withdrawal, on January 10, 2018. Cr. Doc. 80.  At no time during the 16 months of Mr. Coronado's representation did his status convert from retained to appointed.  Mr. Coronado did file a sealed *ex parte* motion seeking the issuance of Rule 17(b) witness subpoenas and an associated Order for Free Process, given that Petitioner was incarcerated, had no income, and lacked funds to pay the costs associated with securing witness testimony at trial.  Cr. Doc. 55.  The Court granted the *ex parte* motion and authorized the subpoenas and free process, but such order did not convert Mr. Coronado's status to that of appointed counsel.

The Sixth Amendment's guarantee of the right to counsel "includes the right to representation that is free from conflicts of interest."  *Gardner v. Galetka*, 568 F.3d 862, 886 (10th Cir. 2009).  A conflict of interest is "a division of loyalties that affected counsel's performance," *Mickens v. Taylor*, 535 U.S. 162, 172 n.5, (2002), and demonstrating an actual conflict of interest can support an ineffective assistance of counsel claim where the conflict prejudiced the defendant's representation.  *See Strickland v. Washington*, 466 U.S. 668, 687–88, 694, (1984).  Generally, a defendant

must demonstrate prejudice flowing from the conflict, but in some circumstances, a court will presume prejudice when the conflict amounts to the complete denial of counsel. *See id.* at 692; *United States v. Cronic*, 466 U.S. 648, 658–60 (1984).

Here, Petitioner's claimed prejudice is the fact that he pleaded guilty when he never intended and because his lawyer schemed with the prosecutor to get him to do so. And liberally construed, Petitioner's motion suggests that because his money had run out, his lawyer worked to short-circuit the process and get Petitioner to plead guilty. The record simply does not support this claim. [10]  But even if it were true, the court must ask whether the results of the proceeding would have been different but for counsel's allegedly ineffective conduct. The Court is unable to reach that conclusion, given the strength of the government's case against Petitioner, the record in the case including Petitioner's own statements, and the sentence ultimately imposed. The Court is unconvinced that counsel operated under a conflict of interest that somehow interfered with his duty of loyalty to his client.

Finally, Petitioner complains that his third attorney was ineffective when he refused to provide legal research on recusals by a district judge. CV Doc. 1 at 9. Liberally construed, this claim assumes that such research would have resulted in a motion, and the failure to file said motion resulted in prejudice to the Petitioner.

---

[10] Petitioner writes that "Petitioner's defense counsel failed to present any defense at all, to conduct any meaningful adversarial challenge as found in this case is especially appalling. The defense counsel's duty is to the client, not the prosecuting attorney." CV Doc. 1 at 14; *also see id.* at 22: "[w]hen attorney knew there was no more money, nothing had been done to correct narrative being set up by government. All the while attorney knew, but since it was not worth his time he withheld pertinent information and failed to procure evidence that would help defendant (Petitioner) either because it wasn't worth his time since he was not being paid…"; *id*. at 23: "…once money never came attorney just stood on opposite side actually taking an active role with prosecution."; *id*. at 23: "…in this case, the work performed was in the interest of the Government."; *id*. at 28: "…my attorney and the prosecutor schemed together to force this plea."

Assuming the third attorney did conduct the research that was sought by Petitioner, this Court is unable to state that a resultant motion would have required the District Judge to recuse himself from presiding over Petitioner's case.  The undersigned's thorough review of the record in this matter reveals nothing that might support Petitioner's position.  Furthermore, based on that record as well as on the weight of the evidence, the decision by counsel to not provide Petitioner this research—if in fact that is what actually happened—is easily viewed as a tactical and strategic decision that did not result in ineffective assistance, let alone prejudice to Petitioner.  *Cf. Strickland*, 466 U.S. at 690 (the Court must give considerable deference to an attorney's strategic decisions and "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.").

CONCLUSION

On the record before me, I am unable to find that counsel was deficient, or that Petitioner suffered prejudice as a result of his lawyers' performances.  Petitioner pleaded guilty knowingly and voluntarily, and free from coercion or threats.  Additionally, the evidence against Petitioner was very strong, conviction after trial would have been likely, and counsel secured for Petitioner the minimum sentence possible under the law.  Petitioner's ineffective assistance claim must fail.

RECOMMENDATION

The record in this case conclusively shows that an evidentiary hearing is not necessary, and that additional time for Petitioner to augment his reply is not warranted.  After carefully considering each of the claims presented, I conclude that Petitioner is not entitled to relief under 28 U.S.C. § 2255.  Petitioner's counsel's performance did not fall below an objective standard of reasonableness, and Petitioner cannot meet the standard set forth in *Strickland v. Washington*,

422 U.S. 668, 687 (1984).  Therefore, I recommend denial of Petitioner's *Motion Under Habeas Corpus [Under] 28 U.S.C. § 2255* and dismissal with prejudice, as well as a denial of a certificate of appealability.


JOHN F. ROBBENHAAR
United States Magistrate Judge


**THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**